**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

```
SUHEIL NAMMARI, et al,        )
                              )
Plaintiffs,                   )
                              )
v.                            )      NO. 2:07-CV-306
                              )
TOWN OF WINFIELD, et al,      )
                              )
Defendants.                   )
```

## OPINION AND ORDER

This matter is before the Court on the: (1) Motion to Dismiss (DE# 20), filed by Defendants, Town of Winfield, The Town Counsil [sic] of the City of Winfield, the Town of Winfield Building Commissioner, Building Inspector, and William Teach, in his individual and official capacity, on November 2, 2007; (2) Motion to Join in Co-Defendant's Motion to Dismiss Complaint (DE# 29), filed by Defendant, Marvin Pinkowski, on November 6, 2007; and (3) Motion to Dismiss of Defendants DLZ Indiana, LLC and Anthony Kenning,[1] (DE# 30) filed on November 9, 2007.

After due consideration, Defendant Pinkowski's motion to join the Town of Winfield's motion to dismiss (DE# 29) is **GRANTED**.

For the reasons set forth below, the Town of Winfield's motion

---

[1]Notably, in addition to filing their own motion, Defendants DLZ Indiana, LLC and Anthony Kenning adopt the Town of Winfield's Motion to Dismiss.  See DE# 30, ¶3.

-1-

to dismiss (DE#20) and DLZ Indiana's motion to dismiss (DE# 30) are **GRANTED IN PART AND DENIED IN PART.**   To the extent these motions seek dismissal of: (1) Plaintiff's section 1983 claims and state law claims arising prior to September 7, 2005; (2) Count 1; (3) Count 3;(4) Count 5; and (5) Count 6; these motions are **GRANTED.**   In all other respects, however, these motions are **DENIED.**   As a result, the only remaining claims are those contained in Counts 2 and 4 that arose on or after September 7, 2005.

Plaintiffs are granted leave to submit any amended complaint within 20 days from the date of this order.


BACKGROUND

On September 7, 2007, Plaintiffs, Suheil Nammari and Intercon Engineering Corporation, filed a complaint against Defendants, Town of Winfield, The Town Counsil [sic] of the City of Winfield, the Town of Winfield Building Commissioner, Building Inspector, DLZ Indiana, LLC, William Teach, Marvin Pinkowski, and Anthony Kenning, individually and in their official capacities.

According to the allegations of the complaint, Nammari was born in Jerusalem and is a non-practicing Muslim of Palestinian decent. (Cmplt. ¶ 22).   He is also the President of Intercon Engineering. (Cmplt. ¶ 8).   Plaintiffs are in the business of assisting developers to develop residential subdivisions. (Cmplt. ¶ 20).   One of Plaintiffs' clients is David Lasco. (Cmplt. ¶ 33).   Plaintiffs

are known in Winfield as David Lasco's engineers.  (Cmplt. ¶ 23).
Nammari also owns a piece of residential property in Winfield, on
which he has been attempting to build his own residence.  (Cmplt.
¶ 21).

Plaintiffs and Lasco politically supported the effort to
incorporate Winfield.  (Cmplt. ¶ 25).  Winfield became incorporated
14 years ago.  (Cmplt. ¶ 24).

During the November 2003 election for council members in
Winfield, Lasco supported candidates who ran against Defendants
Teach and Pinkowski.  (Cmplt. ¶ 27).  During the election, Teach
informed voters that if he were elected, he would block all of
Lasco's developments.  (Cmplt. ¶ 29).  Teach was elected to the Town
Council.  Teach has made numerous anti-Arab, ant-Muslim and other
discriminating remarks about Nammari, including calling him a "camel
jockey."  (Cmplt. ¶ 30).  Teach has made these comments to members
of the Town Council as well as to members in the business community.
(Cmplt. ¶ 31).

Hidden Creek II was a proposed subdivision to be located in
Winfield that was designed and proposed by Lasco.  (Cmplt. ¶¶ 33 &
34). Marvin Pinkowski, also a Town Council member, has stated that
he intended to block Hidden Creek II because it allowed for low rent
housing that would attract "Niggers."  (Cmplt. ¶ 32).  This
subdivision received preliminary plat approval from the Winfield
Plan Commission on July 19, 2002.  (Cmplt. ¶ 35).  Secondary or

Final Plat Approval was granted by the Town of Winfield on December 10, 2003. (Cmplt. ¶ 36). The Final Plat Approval was subject only to the posting of a bond. (Cmplt. ¶ 37). The amount of the bond was to be determined by the town engineer based on the anticipated construction costs of the development plus an additional 10 percent adjusted for inflation. (Cmplt. ¶ 38). After Hidden Creek II was given final approval in December 2003, the Town of Winfield made efforts to change the final plat that had already been approved. (Cmplt. ¶ 39).

In early 2004 Plaintiff began construction on Hidden Creek II in conformity with the final plat approval. (Cmplt. ¶ 40). By letter dated February 12, 2004, Defendant DLZ Indiana LLC, serving as Winfield's Town Engineer, notified the Town of Winfield that the recommended performance bond amount for Hidden Creek II should be $1,210,000. (Cmplt. ¶¶ 17, 41; Ex. A). Anthony Kenning was the project manager for DLZ Indiana and served as the Town of Winfield's Engineer. (Cmplt. ¶ 18). Prairie Crossing development is similarly situated to the Hidden Creek II development. (Cmplt. ¶ 42). On October 6, 2003, Defendant DLZ Indiana LLC recommended a performance bond amount for Prairie Crossing in the amount of $649,000. (Cmplt. ¶ 42; Ex. B). Defendant DLZ required Prairie Crossing to comply only with the Rational Method for Storm Drainage Requirements, while Hidden Creek II was held to the higher more expensive TR 55 Storm Drainage Requirements. (Cmplt. ¶ 43).

On February 25, 2004, Town of Winfield Attorney Lambka sent David Lasco of Lasco Development a letter to cease and desist construction on Hidden Creek II. (Cmplt. ¶ 44; Ex. C). David Lasco obtained the $1.2 million dollar performance bond running to the Town of Winfield. (Cmplt. ¶ 45). At the Town of Winfield's monthly meeting in March of 2004, Attorney Ted Fitzgerald appeared on behalf of David Lasco for the purpose of obtaining approval of the $1.2 million dollar bond. (Cmplt. ¶ 46). Before Attorney Fitzgerald had an opportunity to speak and before there was any discussion at the meeting regarding Hidden Creek II, Attorney Fitzgerald was informed by the Town Council President, Mr. Teach, that the Town would not approve the bond. (Cmplt. ¶ 47). At this March 2004 meeting, the Council rescinded the amount of the Hidden Creek II performance bond. (Cmplt. ¶ 49). Attorney Fitzgerald believed that the Council had violated the "Sunshine laws" and the "open door laws" regarding the Town Council meeting and the Hidden Creek II subdivision. (Cmplt. ¶ 48).

Since Defendants Teach and Pinkowski have been serving on the Town Council, the Town has engaged in a pattern of harassment and discrimination against Plaintiffs and Plaintiffs' clients and developments. (Cmplt. ¶ 50). In March 2007, Plaintiff Nammari was building his personal residence in the Town of Winfield. (Cmplt. ¶ 51). Nammari attempted to get Winfield's building inspector to inspect and approve the construction, but the inspector told Nammari

-5-

that his home was in violation of the height ordinance and would have to apply to the Council for a variance. (Cmplt. ¶ 51). At least 5 other homes in the same subdivision have violated the same height ordinance and were never required by the building inspector to request a variance from the Town Council. (Cmplt. ¶ 51).

In August 2007, Council Member Teach opposed Plaintiff Nammari's request for a variance of his personal residence. (Cmplt. ¶ 52). To the date of the filing of the complaint, the council has not granted Plaintiff Nammari a variance to continue building his home. (Cmplt. ¶ 52).

Nammari believes Defendants' actions of imposing different requirements on his residential building and his clients' developments constitute harassment and discrimination. (Cmplt. ¶ 54). As such, Plaintiffs have filed a six-count complaint against Defendants. Count 1 alleges Defendants violated the Racketeer Influenced and Corrupt Organizations Act("RICO"), 18 U.S.C. section 1964(c); Count 2 alleges Defendants violated Plaintiffs' rights under the Equal Protection Clause of the U.S. Constitution by treating similarly situated engineers and property owners differently based on a number of impermissible considerations, including race; Count 3 alleges Defendants violated the Due Process Clause of the U.S. Constitution by depriving Plaintiffs of constitutionally protected property interests without due process of law; Count 4 alleges Defendants violated the Takings Clause of

the U.S. Amendment by failing to approve permits, variances or plat plans; Count 5 alleges Defendants violated Plaintiffs' First and Fourteenth Amendment rights by discriminating against Nammari based on his religion, national origin, political opinion, and/or associations; and Count 6 alleges Defendants violated Indiana conspiracy law by acting in a concerted action against Plaintiffs.

The Town of Winfield Defendants and DLZ Indiana Defendants have filed separate motions to dismiss each of the counts.  These motions will be addressed in turn below.


DISCUSSION

Town of Winfield's Motion to Dismiss

Defendants, Town of Winfield, The Town Counsil [sic] of the City of Winfield, the Town of Winfield Building Commissioner, Building Inspector, and William Teach, in his individual and official capacity (collectively referred to as the "Town of Winfield"), filed the instant motion to dismiss requesting the Court dismiss Plaintiffs' complaint in its entirety pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.  This motion has been adopted by all Defendants.  (See DE #'s 29, 30).

For the purpose of analyzing Defendants' Rule 12(b)(1) claim, the following standards apply.  Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims over which the federal court lacks subject matter jurisdiction.

Jurisdiction is the "power to decide" and must be conferred upon a federal court. *In re Chicago, Rock Island & Pac. R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986).  When jurisdictional allegations are questioned, the plaintiff has the burden of proving that the jurisdiction requirements have been met. *Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).  In reviewing a Rule 12(b)(1) motion to dismiss, the Court may look beyond the complaint and review any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction exists. *United Transp. Union v. Gateway Western R.R. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996).

To the extent Defendants' claims are under Rule 12(b)(6), the Court will apply the following guidelines.  The purpose of a motion to dismiss is to test the legal sufficiency of the complaint, not to decide the merits. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989).  In determining the propriety of dismissal under Federal Rule of Civil Procedure 12(b)(6), the court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001).  A complaint is not required to contain detailed factual allegations, but it is not enough merely that there might be some conceivable set of facts that entitles the plaintiff to relief. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007), abrogating in part *Conley*

*v. Gibson*, 355 U.S. 41, 45-46 (1957).  A plaintiff has an obligation under Rule 8(a)(2) to provide grounds of his entitlement to relief, which requires more than labels and conclusions.  *Id.* at 1965. Factual allegations, taken as true, must be enough to raise a right to relief above the speculative level.  *Id.*  Moreover, a plaintiff may plead himself out of court if the complaint includes allegations that show he cannot possibly be entitled to the relief sought. Jefferson v. Ambroz, 90 F.3d 1291, 1296-97 (7th Cir. 1996).

<u>Pre-September 7, 2005 Claims Are Barred By</u>
<u>the Applicable Two-Year Statute of Limitations</u>

The Town of Winfield Defendants first argue that all Plaintiffs' section 1983 claims (Counts 2-5) and the state law conspiracy claim (Count 6) arising prior to September 7, 2005 are barred by the statute of limitations.  The statute of limitations for both a section 1983 claim and a conspiracy claim arising in Indiana is two years.  *Brademas v. Ind. Hous. Fin. Auth.*, 354 F.3d 681, 685 (7th Cir. 2004); *Echemendia v. Gene B. Glick Management Corp.*, No. 1:05-CV-53, 2007 WL 869196 at *6 (March 20, 2007, N.D. Ind.).  Applying this two year period of limitations, Plaintiffs would not be able to recover for injury that occurred prior to September 7, 2005.  Plaintiffs do not take issue with the applicable statute of limitations, but nevertheless argue that their pre-September 7, 2005 claims are viable pursuant to the doctrine of equitable tolling.

Plaintiffs set forth two reasons why the doctrine of equitable tolling prevents the statute of limitations from barring their pre-September 7, 2005 claims.  First, Plaintiffs assert that they could not discover that they were injured until August 2007.  Even though Plaintiffs concede that Defendants allegedly committed the discriminatory acts before September 7, 2005, Plaintiffs claim that it was not until August 2007 that Plaintiffs discovered that these acts caused them to suffer a loss of business, loss of business opportunities and damage to Plaintiffs' professional reputation.

In this regard, it seems as though Plaintiffs have confused the doctrine of equitable tolling with the discovery rule.  Pursuant to equitable tolling "the plaintiff is assumed to know that he has been injured, so that the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrong-doing by the defendant." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). However, under the discovery rule, "[a] plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful."  *Thelen v. Marc's Big Boy Corp.*, 68 F.3d 264, 267 (7th Cir. 1995).

Because it is Plaintiffs' argument that they did not discover the injury until August 2007, their argument is more appropriately addressed under the discovery rule.  Under this rule, claims accrue "when the plaintiff knows or has reason to know of the injury which

is the basis for his action." *Brademas v. Indiana Housing Finance Authority*, 354 F.3d 681, 685 (7th Cir. 2004)(citation omitted). However, "the discovery rule does not suspend the accrual of a claim until the plaintiff experiences the entirety of consequences resulting from an injury, but only until the plaintiff has knowledge of an allegedly unlawful action." *Id.* at 686.

There is no question that Plaintiffs knew of Defendants' complained of pre-September 7, 2005 actions regarding the Hidden Creek II development prior to September 7, 2005.  Indeed, they admit as much. (Pls. Response, pp. 5-6).  Plaintiffs knew that Defendants denied the performance bond and refused to allow Lasco Development to complete the Hidden Creek II development.  That knowledge is sufficient to trigger the discovery rule; it is inconsequential that Plaintiffs failed to discover the full extent of their injuries until a later time.  *Id.*

Plaintiffs' second argument does accurately raise the doctrine of equitable tolling, but fares no better.  Plaintiffs claim that they were unable to discover that they were wrongfully injured by Defendants until after the former Winfield Town Planner, Jim Brown, was deposed on September 7, 2005.  At that deposition, Jim Brown stated that Mr. Teach made racially derogatory comments toward Nammari.  Further, Jim Brown produced a memorandum he made that apparently memorialized his conversations with Mr. Teach and Mr. Pinkowski concerning Nammari's developments.  This evidence,

Plaintiffs claim, show that they were unlawfully discriminated against.

"Equitable tolling 'permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim.'" *Smith v. City of Chicago Heights*, 951 F.2d 834, 839 (7th Cir. 1992)(quotation omitted).   The test for equitable tolling is "whether claimant could reasonably have been expected to have filed earlier." *Pervaiz v. Gonzales*, 405 F.3d 488, 490 (7th Cir. 2005). Simply, then, the question is whether a reasonable person in the plaintiff's position would have been aware of the possibility that he" had been discriminated against.   *Beamon v. Marshall & Ilsley Trust Co.,* 411 F.3d 854, 860-61 (7th Cir. 2005).

Plaintiffs have entirely failed to satisfy the pleading requirement for equitable tolling.  Plaintiffs point to nothing in the complaint that alludes to the fact that they did not know or have reason to know of the wrongful nature of Defendants' alleged actions before September 7, 2005.  In their response, Plaintiffs attach a number of exhibits they wish the Court to consider. However, these materials are not to be considered in this context. See Fed. R. Civ. P. 12(b).

Nevertheless, considering the evidence would not alter this Court's finding.  Attached to Plaintiffs' response, is an affidavit from Nammari.  (Ex. 1).  There, Nammari states that the first time

he discovered that Teach or any other representative of the Town of Winfield were making derogatory remarks about him or his business was on September 7, 2005. (Ex. 1, ¶ 2). Further, Nammari provides that he did not discover that Defendants were attempting to block his engineering projects and developments due to discrimination until August of 2007. (Ex. 1, ¶ 21). The problem with the affidavit is that it only addresses when Nammari learned of the alleged discrimination. In the context of equitable tolling, Plaintiffs' lack of actual knowledge is immaterial. *Patel v. Gonzales*, 442 F.3d 1011, 1016 (7th Cir. 2006). What is crucial is whether Plaintiffs exercised due diligence in attempting to learn of the wrongful nature of Defendants' alleged actions.

There is nothing in the complaint or Plaintiffs' submissions that explain what, if anything, Plaintiffs did in an attempt to discern whether Defendants' actions were based on some unlawful consideration. Plaintiffs put much stock in an a 2004 memorandum from Jim Brown produced at Jim Brown's September 7, 2005, deposition. (Ex. 2). Tellingly, though, this memorandum is dated October 1, 2004. (Ex. 2). Thus, it was in existence and discoverable prior to September 7, 2005. Moreover, Lasco Development filed its own discrimination lawsuit against the Town of Winfield regarding the Hidden Creek II development on November 12, 2004. (*Lasco v. Town of Winfield*, 2:04-CV-467). Jim Brown's deposition where he produced the 2004 memorandum took place in

Lasco's lawsuit.  It is interesting to note that Nammari attended Mr. Brown's deposition in that case.  Had Plaintiffs done their due diligence they would have known that Lasco was suing the Town of Winfield for discriminatory practices related to the Hidden Creek II development, spoken with Jim Brown, uncovered this memorandum, and learned that Defendants' actions may be based on discrimination prior to September 7, 2005.  There is nothing in the record to suggest otherwise.

Because the pre-September 7, 2005 claims were not filed within the two-year statute of limitations period and because Plaintiffs have failed to establish that either equitable tolling or the discovery rule applies to the Defendants' statute of limitations defense, these claims must be dismissed. See e.g. *Marx v. Northwestern Memorial Hosp.*, No. 04 C 5688, 2007 WL 1280643, (April 30, 2007 N.D. Ill. 2007)(holding that dismissal of untimely claims is appropriate pursuant to a motion to dismiss when equitable tolling principles do not apply).

Post-September 7, 2005, section 1983 and state law claims are not required to be dismissed merely because the Board of Zoning Appeals has sole authority to approve or deny variance requests

Defendants claim that all matters related to the August 2007 variance request should be denied because these Defendants did not have authority to approve or deny a variance request.  Defendants' argument is predicated on the fact that, according to Indiana law,

-14-

a board of zoning appeals has authority to approve or deny a variance from development standards. Ind. Code § 36-7-4-918, et al; *Robert Lynn Co., Inc. v. Town of Clarksville Board of Zoning Appeals*, 867 N.E.2d 660, 671-674 (Ind. Ct. App. 2007). Thus, because Defendants did not have authority to approve or deny a request variance, they assert that they could not participate in any alleged constitutional wrongdoing.

In response, Plaintiffs raise three arguments why Defendants' claim must fail. However, only one needs to be discussed here.[2] Plaintiffs argue that the Constitutional wrongdoing in this matter was not in denying the variance, but in Defendants requiring that Plaintiff get a variance when other similarly situated homeowners were not required to get a variance for a violation of the same ordinance. This issue is highlighted by Plaintiffs' position that they did not need a variance, but the Defendants fraudulently claimed they did. Under these set of facts, this Court can imagine a colorable claim. See e.g. *Polenz v. Parrott*, 883 F.2d 551, 556 (7th Cir. 1989)(providing that the wrongful requirement or denial of a building permit can invoke substantive and procedural due

_____

[2] Notably, Plaintiffs put forth that the board of zoning appeals is an agent of the Town of Winfield. However, this agency relationship is not supported by the complaint. More important, though, is that agency is not a basis of liability for section 1983 purposes. See e.g. *Yan v. Board of Regents of University of Wis. System*, No. 05-C-16-C, WL 2206768 at *9 (Sept. 12, 2005 W.D. Wis.)(noting that while liability under Title VII is based on agency principles, liability under section 1983 is predicated upon personal fault). Thus, this argument fails.

process protections).  Defendants cite to materials outside of the pleadings in an attempt to defeat this claim, which the Court declines to consider at this time.  See Fed. R. Civ. P. 12(b).

Count 1 alleging a civil RICO claim must
be dismissed because it is inadequately pled

In Count 1, Plaintiffs allege a RICO claim against Defendants. A RICO plaintiff must show: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 778 (7th Cir. 1994)(quotation omitted).  While Rule 8 of the Federal Rules of Civil Procedure requires only a "short and plain statement," that statement must nevertheless show that the pleader is entitled to relief.

In the complaint, Plaintiffs assert that Defendants engaged in racketeering activity, including mail and wire fraud as well as Hobbs Act violations.  Plaintiffs claim Defendants violated the mail and mail fraud statutes by sending at least nine separate letters through the U.S. mail or by means of wire indicating that Plaintiffs and their clients must cease and desist from all work in connection with their developments and also blocking Plaintiffs' and their clients from working on developments.  Plaintiffs allege each letter is a predicate act.

Defendants argue that this count must be dismissed due to Plaintiffs' failure to adequately plead acts of mail fraud or

predicate acts of racketeering activity.  The mail/wire fraud acts must be pleaded with particularity under Rule 9(b) of the Federal Rules of Civil Procedure.  *Emery v. American General Finance, Inc.*, 71 F.3d 1343, 1348 (7th Cir. 1995).  This means that a plaintiff is required to explain how the predicate act of mail fraud or wire fraud constitutes "racketeering activity."  *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 298 (7th Cir. 2003).  This is done by explaining how each element of the predicate act is satisfied.  *Id.* at 299.  The elements of mail and wire fraud, 18 U.S.C. sections 1341 and 1343, are "(1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails or wire communication in furtherance of the fraudulent scheme."  *United States v. Walker*, 9 F.3d 1245, 1249 (7th Cir. 1993).   "In order to satisfy this standard, a RICO plaintiff must allege the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."  *Slaney v. The Intern, Amateur Athletic Federation,* 244 F.3d 580, 599 (7th Cir. 2001). And, in a case involving multiple defendants, such as this, "the complaint should inform each defendant of the nature of his alleged participation of the fraud."  *Vicom*, 20 F.3d at 778.

Despite these heightened pleading requirements, Plaintiffs believe that merely alleging that "racketeering activity consisted

of mail fraud, wire fraud, and interfering with commerce" is sufficient.  As explained above, though, that belief is incorrect.  As a result the predicate acts of mail fraud and wire fraud are not pled with particularity of Rule 9(b) and cannot form the basis of the civil RICO claim.

Plaintiffs also claim that Defendants violated the Hobbs Act by interfering with commerce by acting under color of official right.  Under the Hobbs Act, 18 U.S.C. section 1951, attempts to obstruct, delay, or affect interstate commerce by robbery or extortion are criminal.  These acts include intentionally blocking Plaintiffs and Plaintiffs' clients' developments through utilizing different methods of calculating storm drainage requirements than those used with other similarly situated developers and engineers.  Plaintiffs also claim Defendants refused to grant Plaintiffs or Plaintiffs' clients approval, permits, variances or bonds to perform work for which other similarly situated engineers and developers were granted approval, permits, variances or bonds.  And, third, Plaintiffs argue Defendants violated the Hobbs Act by violating the "open door laws" and "sunshine laws."

With the absence of the mail and wire fraud acts, there are not enough acts to satisfy the pattern requirement.  There are only three alleged Hobbs Act violations that span over the course of three years.  This cannot satisfy the pattern requirement.  See e.g. *Golden v. Nadler, Pritikin & Mirabelli, LLC*, No. 05 C 0283, 2005 WL

-18-

2897397 *6 (N.D. Ill. Nov. 1, 2005)(noting that 5 alleged predicate acts over the period of five months cannot support a pattern). Moreover, the alleged Hobbs Act violations suffer from a deficiency as well.  While it is clear that Plaintiffs allege Defendants have interfered with commerce, it is impossible to discern what is Plaintiffs' theory of extortion or robbery.  This can easily be cleared up in an amended complaint.

This Court does not suggest that the above mentioned pleading deficiencies are the only defects with regard to Count 1. Plaintiffs should ensure that each and every element of the alleged civil RICO claim is adequately pled.  This Count is dismissed without prejudice with leave to file an amended complaint within 20 days.

> Count 3 alleging a procedural due process
> <u>violation must be dismissed because it is inadequately pled</u>

Plaintiffs allege that Defendants deprived them of constitutionally protected property interests "without due process of law." (Cmplt. ¶ 71).  The remaining portion of Count 3 - post-September 7, 2005 actions - seemingly relates to Nammari's loss of the use of his land for the purpose of building his personal residence, monetary loss renewing building permits as well as damages to his personal and professional reputation having been taken without due process of law. (Plts' Response, p. 21).

In order to adequately plead a due process violation, a

plaintiff must show "(1) that []he had a constitutionally protected property interest, (2) that []he suffered a loss of that interest amounting to a deprivation and (3) that the deprivation occurred without due process of law." *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 360 (7th Cir. 2005)(reviewing pleading requirements in procedural due process claim).  Defendants argue that this count should be dismissed because it is inadequately pled and because there are adequate post-deprivation procedures provided for under state law.

As to the supposed pleading deficiency, Defendants argue that there has been no loss amounting to a deprivation.  However, Defendants offer no citation to legal authority supporting their position that the facts, as alleged, do not show a constitutional deprivation.  Property interests are created by, and their scope is defined by, existing rules or understandings stemming from state law. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  There is no reason to think that, if true, Defendants' actions of wrongfully requiring and denying the issuance of a variance on Nammari's residence could not give rise to a constitutional deprivation. *See e.g. Polenz v. Parrott*, 883 F.2d 551, 558 (7th Cir. 1989)(discussing that zoning and building permit denials invoke substantive due process if invidiously or irrationally denied).

While Plaintiffs have adequately pled a property interest, they

also must show that this deprivation occurred without due process of law. Indeed, procedural due process claims should be dismissed if adequate post-deprivation remedies exist under state law. *Parrat v. Taylor*, 451 U.S. 527 (1981). Defendants point out Indiana Code section 34-7-4-1003 as an adequate state law remedy in this case. This section provides that any adverse decision by the board of zoning appeals or legislative body can be appealed to the appropriate state trial court. Plaintiffs have failed to respond to the argument that there are adequate state law remedies and further failed to plead whether theses remedies were ever pursued. Therefore, this claim must be dismissed without prejudice. See e.g. *Black v. Lane*, 22 F.3d 1395, 1408-09 (7th Cir. 1994)(holding that a plaintiff "cannot dodge dismissal of wholly conclusory procedural due process claims simply by omitting crucial allegations from his pleadings."); see also *Gentry v. Village of Bolingbrook*, No. 06 C 6342, 2007 WL 899573 (March 19, 2007, N.D. Ill.)(dismissing procedural due process claim when plaintiff fails to plead anything about the appropriate procedures being inadequate or unfair). Thus, even taking as true the well-pleaded factual allegations in Plaintiffs' complaint, the Court concludes that Plaintiffs have not alleged facts that constitute a due process violation.

Count 4 alleging a Takings Clause violation
<u>must be dismissed because it is inadequately pled</u>

The Takings Clause of the Fifth Amendment provides that no

"private property [shall] be taken for public use, without just compensation." U.S. Const. amend. V. Notably, the Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. *Williamson County Reg. Planning Comm'n v. Hamilton Bank of Johnston Co.*, 473 U.S. 172, 194 (1985).

Plaintiffs claim that Defendants' actions of not approving permits, variances and plat plans constitute a violation of the Takings Clause. As the pre-September 7, 2005, claims are barred, the only claim left appears to be Defendants' alleged actions of falsely requiring and not approving a variance for Nammari's residence gives rise to a Takings Clause violation.

Defendants maintain that their alleged actions with regard to the variance for Nammari's residence cannot give rise to a Takings Clause violation under the Supreme Court's opinion in *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992). In *Lucas*, the Court noted two discrete categories of regulatory action that were generally compensable. The first encompassed regulations that compel the property owner to suffer a physical invasion of his property. *Id.* at 1015. The second situation is where regulation denies all economically beneficial or productive use of land. *Id.* It is not feasible to believe that the denial of issuing a height variance to Plaintiffs could possibly fit into the Takings Clause paradigm. Indeed, Plaintiffs do not show otherwise.

Even if Plaintiffs' allegations could establish a Takings

-22-

Clause violation, this claim would not be ripe for consideration. See e.g. *Peters v. Village of Clifton*, 498 F.3d 727, 732 (2007)(noting that a plaintiff property owner cannot claim a violation until he has received a final decision by the entity responsible for the taking and also sought and been denied compensation under the available state court procedures); See also *Behavioral Institute of Indiana, LLC v. Hobart City of Common Council*, 406 F.3d 926, 931 fn 2. (7th Cir. 2005)(noting that a failed state court takings proceeding is a component of the federal constitutional claim). Since Plaintiffs have failed to allege either that a final decision by the government entity responsible for the taking has been made or state procedures have been exhausted, Plaintiffs have failed to allege a Takings Clause violation and this claim must be dismissed without prejudice. *Id.*

> Count 6 alleging an Indiana conspiracy law
> <u>violation must be dismissed because it is inadequately pled</u>

Plaintiff asserts a claim of conspiracy under state law. Specifically, Plaintiffs claim that "Defendants are liable to the Plaintiffs under Indiana Conspiracy Law as they acted in a concerted action, in concert, in and through a conspiracy to accomplish an illegal purpose through illegal means."

The parties agree that, in Indiana, "there is no civil cause of action for conspiracy." *Sims v. Beamer*, 757 N.E.2d 1021, 1026 (Ind. Ct. App. 2001) (citing *Huntington Mortgage Co. v. DeBrota*, 703

N.E.2d 160, 168 (Ind. Ct. App. 1998).  Yet, "there is a civil cause of action for damages resulting from conspiracy." *Id.*  Thus, when addressing the viability of such any civil conspiracy claim, a court needs to address both the civil conspiracy claim and the underlying tort claim together.  *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1234 (Ind. 1994)(addressing breach of employment contract and conspiracy together in addressing validity of claim).

In Count 6, Plaintiffs have failed to allege what tort Defendants conspired to commit.  Thus, it is impossible to analyze the validity of the claim.  *Id.*  As such, Plaintiff's claim for civil conspiracy must be dismissed without prejudice because no independent cause of action has been pled for which a claim for damages could attach.  *Indianapolis Horse Patrol, Inc. v. Ward*, 217 N.E.2d 626, 628 (Ind. 1966).

<u>DLZ Indiana and Kenning Motion to Dismiss</u>

DLZ Indiana and Kenning adopted all of the Town of Winfield's arguments presented in the Town of Winfield's motion to dismiss. In addition, DLZ Indiana and Kenning present additional arguments. Nevertheless, many of these additional arguments are now moot due to the aforementioned rulings.  The two remaining unaddressed concerns will be discussed below.

> Count 5 alleging a First and Fourteenth Amendment
> violation states a claim for which the relief can be granted

DLZ Indiana and Kenning argue that Plaintiffs' First Amendment political speech claim must be dismissed.  These Defendants note that the only specific allegation that might support this claim of retaliation is that non-party David Lasco exercised his constitutional right of free speech to support candidates who ran against two of the individual named defendants for seats on the Town Council.  These Defendants believe that because there is no allegation by Plaintiffs that there was retaliation based on Plaintiffs' own political speech, this claim must be dismissed.

Plaintiffs respond to this allegation by clarifying their claim.  "Plaintiffs are not arguing that retaliation in this case is based on Plaintiffs' political speech, but rather on Plaintiffs' political association with David Lasco."  (Pls. Response, p. 3). This is not inconsistent with the allegations of the complaint.

The complaint alleges that Plaintiffs have been harassed and discriminated against by the Town of Winfield and its agents, including the Town Engineer. (Cmplt ¶ 53). Arguably, this includes wrongfully requiring and denying a variance of Nammari's residence. (Cmplt ¶¶ 50-54).  These actions were allegedly taken due to Plaintiffs' association with Defendants' political enemy.  (Cmplt ¶¶ 27, 83).

To ultimately prevail on their section 1983 retaliation claim, Plaintiffs will be required to show that "the expression at issue

[was] protected, and it must have brought about the retaliatory action complained of." *Roger Whitmore's Auto. Services, Inc. v. Lake County, Illinois*, 424 F.3d 659, 668 (7th Cir. 2005).  Whether Plaintiffs' ultimately show that their affiliation with David Lasco was for public or private purposes is not of concern at this point. In due time, discovery will likely spell that out.  And, assuming Plaintiffs' affiliation with David Lasco was constitutionally protected, whether Plaintiffs establish a causal link between the protected act and the alleged retaliation can be a matter for summary judgment as well.  At this point, Plaintiffs adequately pled that they were harmed due to their political association with David Lasco.  While these Defendants argue that their alleged actions were not sufficiently detailed, this Court finds Plaintiffs' allegations meet Rule 8's pleading requirements.

> Plaintiffs failed to plead subject
> matter jurisdiction over state law claim

These Defendants also take issue with Plaintiffs failure to plead any basis of subject matter jurisdiction by this Court over the conspiracy claim.  Upon review of the complaint, it is clear that Plaintiffs have failed to plead pendent jurisdiction.  All necessary jurisdictional allegations should be contained in any amended complaint.

<u>CONCLUSION</u>

     For the reasons set forth above, the Town of Winfield's motion to dismiss (DE# 20) and DLZ Indiana's motion to dismiss (DE# 30) are **GRANTED IN PART and DENIED IN PART.**


**DATED:  March 18, 2008**        **/s/RUDY LOZANO, Judge**
                                             **United States District Court**