# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

SUHEIL NAMMARI, *et al,*       )
                              )
Plaintiffs,       )
                              )
v.       )       NO. 2:07-CV-306
                              )
TOWN OF WINFIELD, *et al,*       )
                              )
Defendants.       )

## <u>OPINION AND ORDER</u>

This matter is before the Court on the: (1) Motion to Dismiss Amended Complaint (DE# 53), filed by Defendants, Town of Winfield, The Town Council of the City of Winfield, the Town of Winfield Building Commissioner, Building Inspector, William Teach, and Thomas Richardson, in their individual and official capacity, on May 14, 2008; and (2) Defendants DLZ Indiana, LLC and Anthony Kenning's Motion to Dismiss Amended Complaint for Failure to State a Claim (DE# 55), filed on May 16, 2008.[1]  For the reasons set forth below these motions are **GRANTED IN PART and DENIED IN PART**.  Accordingly, Counts 1, 3 and 4 of the Amended Complaint are **DISMISSED**.


<u>BACKGROUND</u>

On September 7, 2007, Plaintiffs, Suheil Nammari and Intercon

---

[1]Defendant Marvin Pinkowski has joined and adopted his co-Defendants' motions to dismiss.  (DE ##'s 60, 66, 68).

Engineering Corp., filed a six-count complaint against Defendants. In response, Defendants filed motions to dismiss, which were granted in part and denied in part. In April of this year Plaintiffs filed an amended complaint, re-alleging their original claims, adding additional claims and adding Thomas Richardson as a Defendant.

Defendants have filed the instant motions to dismiss arguing that each of Plaintiffs' claims should be dismissed for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

DISCUSSION

Allegations in Plaintiffs' Amended Complaint

Plaintiff, Suheil Nammari ("Nammari"), is a Lake County, Indiana, resident and the President of Intercon Engineering. (Am. Cmplt. ¶¶ 8 & 9). Defendant Town of Winfield is a municipal corporation and Defendants William Teach and Marvin Pinkowski are members of the Winfield Town Council. (Am. Cmplt. ¶¶ 10, 13-16). Defendants, the Town of Winfield Building Commissioner, the Town of Winfield Building Inspector, and Thomas Richardson were appointed to act on behalf of the Town of Winfield. (Am. Cmplt. ¶ 17). Defendant DLZ Indiana, LLC serves as the Town of Winfield's Engineer and Defendant, Anthony J. Kenning, was the project manager for DLZ Indiana, LLC. (Am. Cmplt. ¶¶ 18, 19).

Plaintiffs are engineers and property owners who are in the

business of developing property and assisting other developers develop residential subdivisions. (Am. Cmplt. ¶ 21). Nammari was a part owner of the Doubletree Estates Development and owns a piece of residential property located in the Town of Winfield, on which he has built his own residence. (Am. Cmplt. ¶ 22). Nammari was born in Jerusalem and is a non-practicing Muslim of Palestinian decent. (Am. Cmplt. ¶ 23).

David Lasco ("Lasco") is a long-time client and business associate of Plaintiffs. (Am. Cmplt. ¶ 24). Plaintiffs are known in Winfield as David Lasco's engineers. (Am. Cmplt. ¶ 25). During the November 2003 election for council members in Winfield, Nammari and Lasco supported candidates who ran against Defendants Teach and Pinkowski. (Am. Cmplt. ¶ 27). During the election, Teach informed voters that if he were elected, he intended to block all of Lasco's developments. (Am. Cmplt. ¶ 28).

Hidden Creek II is a subdivision that was designed and proposed by Lasco, which was to be located in the Town of Winfield. (Am. Cmplt. ¶¶ 29, 30). This subdivision received preliminary plat approval from the Winfield Plan Commission on July 19, 2002. (Am. Cmplt. ¶ 31). Secondary or Final Plat Approval was granted by the Town of Winfield on December 10, 2003. (Am. Cmplt. ¶ 32). The Final Plat Approval was subject only to the posting of a bond. (Am. Cmplt. ¶ 33). The amount of the bond was to be determined by the town engineer based on the anticipated construction costs of the

development, plus an additional 10 percent adjusted for inflation. (Am. Cmplt. ¶ 34). After Hidden Creek II was given secondary approval in December 2003, the Town of Winfield made efforts to change the final plat. (Am. Cmplt. ¶ 35).

In early 2004 Plaintiff began construction on Hidden Creek II in conformity with the final plat approval. (Am. Cmplt. ¶ 36). By letter dated February 12, 2004, Defendant DLZ Indiana LLC, serving as Winfield's Town Engineer, notified the Town of Winfield Planner that the recommended performance bond amount for Hidden Creek II should be $1,210,000. (Am. Cmplt. ¶ 37). Copies of this letter were sent to William Teach, the Town of Winfield, Suheil Nammari, Intercon Engineering Corp. and DLZ Indiana. (Am. Cmplt. ¶ 37).

On October 6, 2003, Defendant DLZ Indiana LLC recommended a performance bond in the amount of $649,000 for the Prairie Crossing Development, which is similarly situated to the Hidden Creek II Development. (Am. Cmplt. ¶ 38; Ex. B). Defendant DLZ required Prairie Crossing to comply only with the Rational Method for Storm Drainage Requirements, while Hidden Creek II was held to the higher more expensive TR 55 Storm Drainage Requirements. (Am. Cmplt. ¶ 39).

On February 25, 2004, Town of Winfield Attorney Lambka sent David Lasco of Lasco Development a letter to cease and desist construction on Hidden Creek II. (Am. Cmplt. ¶ 40; Ex. C). On March 1, 2004, David Lasco obtained the $1.2 million dollar

performance bond. (Am. Cmplt. ¶ 41). On March 2, 2004, Mr. Lambka wrote a letter to Lasco stating that he had received the Agreement for Easement and the Letter of Credit. (Am. Cmplt. ¶ 42). Mr. Lambka stated that the Agreement for Easement was not sufficient and that the Town would not accept the Letter of Credit. (Am. Cmplt. ¶ 42).

At the Town of Winfield's monthly meeting in March of 2004, Attorney Ted Fitzgerald appeared on behalf of David Lasco for the purpose of obtaining approval of the $1.2 million dollar bond for the Hidden Creek II subdivision. (Am. Cmplt. ¶ 44). Before Attorney Fitzgerald had an opportunity to speak and before there was any discussion at the meeting regarding Hidden Creek II, Attorney Fitzgerald was informed by the Town Council President, Mr. Teach, that the Town would not approve the bond. (Am. Cmplt. ¶ 45). At this March 2004 meeting, the Council rescinded the amount of the Hidden Creek II performance bond and failed or refused to reset the amount. (Am. Cmplt. ¶ 47). Attorney Fitzgerald believed that the Town Council had violated the "Sunshine laws" and the "open door laws" regarding the meeting and the Hidden Creek II subdivision. (Am. Cmplt. ¶ 46).

On November 12, 2004, Lasco initiated a lawsuit in federal court against the Town of Winfield, alleging that the Town had violated his constitutional rights by attempting to delay and prevent him from completing the Hidden Creek II Development. (Am.

Cmplt. ¶ 48). Plaintiffs were not parties to Lasco's federal lawsuit, because it was believed that the Town of Winfield's discrimination was aimed at Lasco personally; the only information Plaintiffs had regarding the motivations for the Town's actions were the statements by William Teach that it was his intention to block Lasco's projects. (Am. Cmplt. ¶ 49).

Nevertheless, Nammari was actively involved in the preparation and investigation of the Town's discriminatory actions towards Lasco. (Am. Cmplt. ¶ 50). Nammari was in contact with both Lasco's attorneys and the Town of Winfield's attorneys in an effort to resolve the dispute between Lasco and the Town of Winfield. (Am. Cmplt. ¶ 51). Despite Plaintiffs' effort in investigating the Hidden Creek II issues and the Doubletree Estates development with the Town of Winfield, it was not until September 7, 2005, that anyone involved on the plaintiffs' side of the Lasco litigation discovered that the Town had also been discriminating and defaming Nammari and Intercon Engineering. (Am. Cmplt. ¶ 52).

On September 7, 2005, during the deposition of James Brown, Plaintiffs first discovered that William Teach and other agents of the Town of Winfield were discriminating against Nammari and Intercon Engineering, making defamatory statements and attempting to interfere in Plaintiffs' business relationships. (Am. Cmplt. ¶ 53). This memo was not discoverable prior to the deposition of James Brown, as Mr. Brown was the Town of Winfield attorney and the

attorney-client privilege would have prevented the production of such discovery. (Am. Cmplt. ¶ 54). It was not until that September 7, 2005, deposition that Mr. Brown realized that the attorney client privilege did not apply to the document and the document was released to Lasco's attorneys. (Am. Cmplt. ¶ 54). Prior to receiving this document, Plaintiffs were unable to discover that they were wrongfully injured and were being targeted for harassment and discrimination. (Am. Cmplt. ¶ 55).

William Teach has made numerous anti-Arab, ant-Muslim and other discriminating remarks about Nammari, including calling him a "camel jockey." (Am. Cmplt. ¶ 56). Teach has made these comments to members of the Town Council as well as to members in the business community. (Am. Cmplt. ¶ 57). William Teach has made these comments before and after September 5, 2005 and continues to do so to date. (Am. Cmplt. ¶ 57). Other Defendants have also made defamatory remarks about Plaintiffs. (Am. Cmplt. ¶ 58).

Nammari was the engineer for the Doubletree Estates development and also had an ownership interest in the development, along with Lasco. (Am. Cmplt. ¶¶ 59, 60). Marvin Pinkowski, a Town of Winfield council member, stated that he intended to block one of Plaintiffs' development projects - Doubletree Estates - because it allowed for low-rent housing that would attract "niggers." (Am. Cmplt. ¶ 61). Defendants have intentionally delayed the Doubletree Estates development. (Am. Cmplt. ¶¶ 62 & 63).

On October 25, 2005, Defendants Anthony Kenning and DLZ, on behalf of the Town of Winfield, sent an e-mail to Tony Meyer and Kenneth Matney, fraudulently stating that the storm water easements for the development were of unacceptable width. (Am. Cmplt. ¶ 64). This letter was allegedly sent to discriminate against Plaintiffs and delay or prevent Plaintiffs' developments from being completed. (Am. Cmplt. ¶ 64).

On November 14, 2005, in a further attempt to hurt Plaintiffs and Plaintiffs' projects, Anthony Kenning allegedly sent a Review Memorandum via fax to the Town of Winfield, Tom Richardson, Kenneth Matney, Tony Meyer and Todd Etzler, which fraudulently required excess additions and corrections to phase 2 of the Doubletree Estates development. (Am. Cmplt. ¶ 65).

Since Defendants Teach and Pinkowski have been serving on the Town Council, the Town has engaged in a pattern of harassment and discrimination against Plaintiffs and Plaintiffs' clients and developments. (Am. Cmplt. ¶ 66). However, this pattern was not discoverable despite Plaintiffs' diligent investigation of the issues until September of 2005 as the harassment appeared to be directed only at Lasco until Jim Brown's deposition. (Am. Cmplt. ¶ 66).

Due to Defendants delaying the Hidden Creek II project, Plaintiffs had to re-file their sketch plans and preliminary plat approval. (Am. Cmplt. ¶ 67). Each refiling required Plaintiffs and

their clients to pay fees to the Town of Winfield. (Am. Cmplt. ¶ 67). In addition, Anthony Kenning and DLZ Indiana received a monetary gain by requiring Plaintiffs to resubmit calculations and designs, as they were able to bill the Town of Winfield by the hour for the extra time spent reviewing resubmitted material and attending special meetings. (Am. Cmplt. ¶ 68).

Plaintiffs had a personal interest in the completion of the Hidden Creek II development, because the contract stated that they would be paid for their engineering services only after the project was completed. (Am. Cmplt. ¶ 69). Because the Town wrongfully delayed the Hidden Creek II project, Plaintiffs were never paid for their engineering work on Hidden Creek II. (Am. Cmplt. ¶ 70). Because of the Town of Winfield's harassment and delay of Plaintiffs' development projects, Plaintiffs and Lasco had to sell their interest in Doubletree Estate development; Plaintiffs took a financial loss on the sale. (Am. Cmplt. ¶ 71). Before granting final plat approval to the Doubletree Estate development, William Teach insisted that the new owners present proof that Lasco was no longer a participant in that subdivision. (Am. Cmplt. ¶ 72).

In March 2007, Plaintiff Nammari was building his personal residence in the Town of Winfield. (Am. Cmplt. ¶ 73). Nammari attempted to get Winfield's building inspector to inspect and approve the construction, but the inspector told Nammari that his home was in violation of the height ordinance and would have to

apply to the Council for a variance. (Am. Cmplt. ¶ 73). At least 5 other homes in the same subdivision have violated the same height ordinance and were never required by the building inspector to request a variance from the Town Council. (Am. Cmplt. ¶ 73).

In August 2007, Council Member Teach opposed Plaintiff Nammari's request for a variance of his personal residence. (Am. Cmplt. ¶ 74). After the filing of Plaintiffs' original complaint, Defendants admitted that Plaintiff did not need a variance and granted Plaintiff the green tags to proceed with building his home. (Am. Cmplt. ¶ 75). The delay in the construction of Nammari's home cost Plaintiff additional expense, including obtaining extensions on building permits and paying filing and publication fees. (Am. Cmplt. ¶ 76).

Nammari believes Defendants' actions constitute harassment and discrimination. As such, Plaintiffs have filed an eight-count complaint against Defendants. Count 1 alleges Defendants violated the Racketeer Influenced and Corrupt Organizations Act("RICO"), 18 U.S.C. section 1964©; Count 2 alleges Defendants violated Plaintiffs' rights under the Equal Protection Clause of the U.S. Constitution by treating similarly situated engineers and property owners differently based on a number of impermissible considerations, including race; Count 3 alleges Defendants violated the Due Process Clause of the U.S. Constitution by depriving Plaintiffs of constitutionally protected property interests without

due process of law; Count 4 alleges Defendants violated the Takings Clause of the U.S. Amendment by failing to approve permits, variances or plat plans; Count 5 alleges Defendants violated Plaintiffs' First and Fourteenth Amendment rights by discriminating against Nammari based on his religion, national origin, political opinion, and/or associations; Count 6 alleges Defendants defamed them; Count 7 alleges Defendants tortiously interfered with Plaintiffs' business relations; and Count 8 alleges Defendants violated Indiana conspiracy law by acting in a concerted action against Plaintiffs.

The Town of Winfield Defendants and DLZ Indiana Defendants have filed separate motions to dismiss each of the counts. These motions will be addressed in turn below.

Legal Standard

The purpose of a motion to dismiss is to test the legal sufficiency of the complaint, not to decide the merits. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). In determining the propriety of dismissal under Federal Rule of Civil Procedure 12(b)(6), the court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001). A complaint is not required to contain detailed factual allegations, but it is not enough merely that there

might be some conceivable set of facts that entitles the plaintiff to relief. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007), abrogating in part *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A plaintiff has an obligation under Rule 8(a)(2) to provide grounds of his entitlement to relief, which requires more than labels and conclusions. *Id.* at 1965. Factual allegations, taken as true, must be enough to raise a right to relief above the speculative level. *Id.* Moreover, a plaintiff may plead himself out of court if the complaint includes allegations that show he cannot possibly be entitled to the relief sought. *Jefferson v. Ambroz*, 90 F.3d 1291, 1296-97 (7th Cir. 1996).

Town of Winfield's Motion to Dismiss

The Town of Winfield Defendants seek dismissal of all eight counts of Plaintiffs' amended complaint. They assert Count 1, which raises a civil RICO claim, fails because municipal entities are not proper defendants and also because the amended complaint fails to allege "a pattern" of racketeering activity. Defendants further argue that Counts 2 through 5, which raise section 1983 claims, fail because they are outside the applicable statute of limitations and also because they fail to allege an actionable constitutional deprivation. Finally, Defendants allege they are immune from liability in the claims alleged in Counts 6 through 8, which raise supplemental state law claims, due to Plaintiffs failing to comply

with the Indiana Tort Claims Act.  These issues will be addressed in turn.

### Plaintiffs cannot maintain a RICO action against municipal Defendants

In Count 1 of the amended complaint, Plaintiffs allege a civil RICO ("Racketeer Influenced and Corrupt Organizations Act"), 18 U.S.C. section 1962(c), claim against Defendants.  The Town of Winfield Defendants, including William Teach in his official capacity, argue that they can not be liable for civil RICO claims as a matter of law.  Plaintiffs counter by stating that municipal defendants fit into the definition of both "person" and "enterprise," as those terms are defined in 18 U.S.C. section 1961, and, therefore, they can be liable for civil RICO claims.

While a municipal entity may be a RICO enterprise, see *United States v. Emond*, 935 F.2d 1511, 1512 (7th Cir. 1991), it is not subject to RICO liability.  *Lancaster Comm. Hospital v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404-05 (9th Cir. 1991); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 914 (3d Cir. 1991); *Lathrop v. Juneau & Assocs, Inc., P.C.*, 220 F.R.D. 330, 334 (S.D. Ill. 2004); *Haroco Inc. v. American National Bank*, 747 F.2d 384, 401-02 (7th Cir. 1984).  Because the Town of Winfield cannot be held liable under Count 1, the claims against the town council and Town of Winfield employees in their official capacities cannot be maintained.  *Lathrop*, 220 F.R.D. at 335(citing *Sanville v.*

-13-

*McCaughtry*, 266 F.3d 724, 732-33 (7th Cir. 2001)(stating "[o]fficial capacity suits are actions against the government entity of which the official is part")).  However, as the amended complaint does not state an actionable RICO claim, as set forth below, this finding is without consequence.

<u>The amended complaint does not state a RICO claim</u>

The RICO statute makes it unlawful "to conduct an enterprise's affairs through a pattern of racketeering activity."  The Supreme Court has taught that such a claim requires a showing of four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Sedima, S.P.R.L. v. Imrex Company, Inc.*, 473 U.S. 479, 496 (1985).  In addition, a plaintiff must allege and prove the existence of two distinct entities: (1) a person; and (2) and enterprise.  *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 161 (2001).

Our Circuit has taught that:

> Congress enacted RICO in an attempt to eradicate organized, long-term criminal activity.  To that end, Congress chose to supplement criminal enforcement of its provisions with a civil cause of action for persons whose business or property has been injured by such criminal activity.  To encourage private enforcement, Congress provided civil RICO plaintiffs with the opportunity to recover treble damages, costs, and attorney's fees if they can successfully establish the elements of a RICO violation by a preponderance of the evidence.

-14-

*Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992)(citations omitted).

Essentially, the theory of Plaintiffs' RICO claim is that the Defendants coordinated a scheme to unlawfully "depriv[e] Plaintiffs of their intangible right to honest public services and to block Plaintiffs and Plaintiffs' clients from developing their land in the Town of Winfield." (Pls resp. p. 20).

To begin to establish a civil RICO claim, a plaintiff must adequately allege that defendants engaged in predicate acts of racketeering activity. These predicate acts must be indictable under an enumerated list of offenses contained in 18 U.S.C. section 1961(1)(B). This list includes mail fraud, wire fraud, and the Hobbs Act. In the amended complaint, Plaintiffs have accused Defendants of committing predicate acts of mail and wire fraud as well as violating the Hobbs Act in the process of carrying out the alleged scheme.

The alleged Hobbs Act, 18 U.S.C. section 1951, violations in the amended complaint include Defendants intentionally blocking Plaintiffs and Plaintiffs' clients' developments through utilizing different methods of calculating storm drainage requirements than those used with other similarly situated developers and engineers; refusing to grant Plaintiffs or Plaintiffs' clients approval, permits, variances or bonds to perform work for which other similarly situated engineers and developers were granted approval,

permits, variances or bonds; and, violating the "open door laws" and "sunshine laws." Under the Hobbs Act, attempts to obstruct, delay, or affect interstate commerce by robbery or extortion are criminal. Plaintiffs have failed to explain how these alleged acts are tantamount to criminal extortion. And, this Court has serious doubts they are.

Plaintiffs claim each of the twenty-four letters that the Defendants sent regarding their development projects constitutes a separate count of mail or wire fraud. Mail and wire fraud acts must be pleaded with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. *Emery v. American General Finance, Inc.*, 71 F.3d 1343, 1348 (7th Cir. 1995). This means that a plaintiff is required to explain how the predicate act of mail fraud or wire fraud constitutes "racketeering activity." *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 298 (7th Cir. 2003). This is done by explaining how each element of the predicate act is satisfied. *Id.* at 299. The elements of mail and wire fraud, 18 U.S.C. sections 1341 and 1343, are "(1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails or wire communication in furtherance of the fraudulent scheme." *United States v. Walker*, 9 F.3d 1245, 1249 (7th Cir. 1993). "In order to satisfy this standard, a RICO plaintiff must allege the identity of the person who made the representation, the time, place and content

of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Slaney v. The Intern, Amateur Athletic Federation,* 244 F.3d 580, 599 (7th Cir. 2001). And, in a case involving multiple defendants, such as this, "the complaint should inform each defendant of the nature of his alleged participation of the fraud." *Vicom*, 20 F.3d at 778. Plaintiffs have attached a copy of each letter or fax that they are relying on to establish the predicate acts. Plaintiffs also detail each Defendant's role in the predicate acts. The question then, is whether Plaintiffs have alleged a pattern of racketeering activity.

A "pattern of racketeering activity" is statutorily defined as the commission of at least two of the enumerated predicate acts within a ten year period. 18 U.S.C. § 1961(5). Courts have expanded upon this requirement, though, applying what is known as the "continuity plus relationship" test to limit civil RICO claims to long-term criminal conduct. *See Midwest Grinding Co.*, 976 F.2d at 1022. The "continuity plus relationship" is both a closed and open ended concept. Plaintiffs are proceeding under the open-ended continuity. (Pls Resp. p. 21).

To show open-ended continuity, a plaintiff must demonstrate: (1) a "specific threat of repetition"; (2) that the "predicate acts or offense are part of an ongoing entity's regular way of doing business"; or (3) that defendants operate a "long term association that exists for criminal purposes. *Midwest Grinding Co.*, 976 F.2d

-17-

at 1023(quotations omitted).  Here, Plaintiffs claim that they have shown open-ended continuity "by showing past conduct which 'by its very nature projects into the future with the threat of repetition.'"  (Pls Resp. p. 21).  Without any legal authority, Plaintiffs assert that "[o]ne who has exhibited a pattern of discriminatory behavior against another based on that person's immutable traits is quite likely to continue such discrimination, because the reason they are discriminating is unchanging."  (Pls Resp. p. 21).

Instead of adopting Plaintiffs' speculative conclusion, this Court will look to this Circuit's precedent to determine whether continuity exists.  To make this determination, the Seventh Circuit has instructed that ""[r]elevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries. *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986).  Looking at these factors, this Court finds that no continuity exists that is consistent with Congress's concern with long-term criminal conduct.

Plaintiffs have alleged twenty-four predicate acts of mail/wire fraud spanning over five and one-half years.  (Pls resp., p. 21).  While twenty-four predicate acts spanning over 5 ½ years may seem at first blush to allege continuity, the sheer number of predicate acts are not dispositive when those acts are mail/wire fraud. *U.S.*

*Textiles, Inc. v. Anheuser-Busch Companies, Inc.*, 911 F.2d 1261, 1266 (7th Cir. 1990)(noting that mail and wire fraud are unique in that the number of predicate acts "may be no indication of the requisite continuity of the underlying fraudulent activity"). Thus, the number of predicate acts and length of time over which they occurred are not indicative of continuity.

Plaintiffs also argue that both they and their clients were harmed. (Pls resp., p. 22). However, according to the amended complaint, Nammari and Lasco are the identifiable victims. While Plaintiffs allege "their clients" have been collaterally damaged by the delays to the developments in the form of paying extra fees, Nammari and Lasco are the only victims who have been identified and targeted by Defendants. Such a fact weighs against continuity. *Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 475 (7th Cir. 2007).

Finally, Plaintiffs allege that they suffered several distinct injuries, including the blockage of housing developments, Nammari's personal residence and Nammari's reputation has been tarnished. Plaintiffs allege their clients have been harmed due to the delay of the developments because they were required to submit excess bonds running to the Town of Winfield and to pay extra fees to renew and resubmit permit requests. But, while Plaintiffs attempt to categorize Defendants' alleged actions as containing a number of different schemes, the amended complaint clearly evinces that there

is only a single scheme - to block Nammari and Lasco's real estate projects.

Our circuit has described the "prototypical RICO case" as:

> one in which a person bent on criminal activity seizes control of a previously legitimate firm and uses the firm's resources, contacts, facilities, and appearance of legitimacy to perpetuate more, and less easily discovered, criminal acts than he could do in his own person, that is, without channeling his criminal activities through the enterprise that he has taken over.

*Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997).

This case is far from the prototypical RICO case. In fact, as currently pled, Plaintiffs fail to allege anything more than a scheme by Defendants designed to harass Nammari and Lasco. Indeed, what is evident from the Complaint is that Defendants allegedly delayed Plaintiffs' developments based upon Nammari's political association with David Lasco and Nammari's ethnicity, religious beliefs and/or national origin. (Am. Cmplt ¶ 54). Notably, though, "RICO is not a substitute for" isolated civil rights actions. *Corley v. Rosewood Center, Inc. of Peoria*, 388 F.3d 990, 1002 (7th Cir. 2004). This case involves isolated acts of alleged discrimination, not organized, habitual criminal conduct and, therefore, the RICO claim must be dismissed. *Gamboa v. Velez*, 457 F.3d 703, 710 (7th Cir. 2006).

Plaintiffs'alleged pre-September 7, 2005, section 1983 claims survive the motion to dismiss based on equitable tolling

The Town of Winfield Defendants argue that all of Plaintiffs' section 1983 claims arising prior to September 7, 2005 are barred by the applicable statute of limitations. The statute of limitations for a section 1983 claim in Indiana is two years. *Brademas v. Ind. Hous. Fin. Auth.*, 354 F.3d 681, 685 (7th Cir. 2004); *Echemendia v. Gene B. Glick Management Corp.*, No. 1:05-CV-53, 2007 WL 869196 at *6 (March 20, 2007, N.D. Ind.). Applying this two year period of limitations, Plaintiffs would not be able to recover for injury that occurred prior to September 7, 2005. Plaintiffs do not take issue with the applicable statute of limitations, but nevertheless argue that their pre-September 7, 2005 claims are viable relying on both the discovery rule and equitable tolling.

Under the equitable tolling doctrine, "the plaintiff is assumed to know that he has been injured, so that the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrong-doing by the defendant." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). "Equitable tolling focuses on whether the plaintiff exercised due diligence but was nevertheless unable to determine information needed to bring a claim." *Smith v. City of Chicago Heights*, 951 F.2d 834, 839 (7th Cir. 1992). Here, Plaintiffs allege they exercised due diligence but were nevertheless unable to determine information needed to bring a claim until September 7, 2005. Defendants complain that Plaintiffs fail to

describe all of the alleged due diligence.  However, Plaintiffs are not required to plead with such specificity at this point; their allegations are sufficient at this stage of the litigation.  *Early v. Bankers Life and Casualty Co.*, 959 F.2d 75, 78-79 (7th Cir. 1992).  As a result, this Court finds Plaintiffs' pre-September 7, 2005 claims survive the pleading stage based on equitable tolling.

Plaintiffs also argue their pre-September 7, 2005 claims are viable pursuant to the discovery rule.  Under the discovery rule, "[a] plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful."  *Thelen v. Marc's Big Boy Corp.*, 68 F.3d 264, 267 (7th Cir. 1995).  Plaintiffs' argue that the discovery rule applies because they did not discover the full extent of their injuries until August 2007.  Under the discovery rule, claims accrue "when the plaintiff knows or has reason to know of the injury which is the basis for his action."  *Brademas v. Indiana Housing Finance Authority*, 354 F.3d 681, 685 (7th Cir. 2004)(citation omitted).  However, "the discovery rule does not suspend the accrual of a claim until the plaintiff experiences the entirety of consequences resulting from an injury, but only until the plaintiff has knowledge of an allegedly unlawful action."  *Id*. at 686.  Because the amended complaint shows that Plaintiffs had knowledge of their injury before September 7, 2005, Plaintiffs reliance upon the discovery rule cannot be maintained.

Plaintiffs' procedural due process claim must
be dismissed because it is inadequately pled

Plaintiffs allege that Defendants deprived them of constitutionally protected property interests "without due process of law." (Am. Cmplt. ¶ 97). In order to adequately plead a due process violation, a plaintiff must show "(1) that []he had a constitutionally protected property interest, (2) that []he suffered a loss of that interest amounting to a deprivation and (3) that the deprivation occurred without due process of law." *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 360 (7th Cir. 2005)(reviewing pleading requirements in procedural due process claim). Defendants argue that this claim should be dismissed because there are adequate post-deprivation procedures provided for under state law. In response, Plaintiffs argue that, at this stage of the litigation, they do not need to address whether there are any adequate post-deprivation procedures available because such an allegation is nothing more than an affirmative defense.

Despite Plaintiffs' belief that they are not required to address the issue of post-deprivation procedures, procedural due process claims should be dismissed if adequate post-deprivation remedies exist under state law. *Parrat v. Taylor*, 451 U.S. 527 (1981). Defendants point out Indiana Code section 34-7-4-1003 as an adequate state law remedy in this case. This section provides that any adverse decision by the board of zoning appeals or legislative body can be appealed to the appropriate state trial

-23-

court.  Plaintiffs have failed to respond to the argument that there are adequate state law remedies and further failed to plead whether theses remedies were ever pursued.  Therefore, this claim must be dismissed.  See e.g. *Black v. Lane*, 22 F.3d 1395, 1408-09 (7th Cir. 1994)(holding that a plaintiff "cannot dodge dismissal of wholly conclusory procedural due process claims simply by omitting crucial allegations from his pleadings."); see also *Gentry v. Village of Bolingbrook*, No. 06 C 6342, 2007 WL 899573 (March 19, 2007, N.D. Ill.)(dismissing procedural due process claim when plaintiff fails to plead anything about the appropriate procedures being inadequate or unfair).  Thus, even taking as true the well-pleaded factual allegations in Plaintiffs' complaint, the Court concludes that Plaintiffs have not alleged facts that constitute a due process violation.

> **Plaintiffs' Takings Clause claim must**
> <u>be dismissed because it is inadequately pled</u>

The Takings Clause of the Fifth Amendment provides that no "private property [shall] be taken for public use, without just compensation." U.S. Const. amend. V.  Notably, the Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. *Williamson County Reg. Planning Comm'n v. Hamilton Bank of Johnston Co.*, 473 U.S. 172, 194 (1985).

Plaintiffs claim that Defendants' committed an illegal taking of their property and business interests in Hidden Creek II,

Doubletree Estate and Nammari's personal residence because of Defendants' failure to approve permits, variances and plat plans. Defendants maintain that such allegations cannot give rise to a Takings Clause violation under the Supreme Court's opinion in *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992). In *Lucas*, the Supreme Court noted two discrete categories of regulatory action that were generally compensable. The first encompassed regulations that compel the property owner to suffer a physical invasion of his property. *Id.* at 1015. The second situation is where regulation denies all economically beneficial or productive use of land. *Id.* It is not feasible to believe that the denial of issuing a height variance to Plaintiffs could possibly fit into the Takings Clause paradigm. Neither could Hidden Creek II, as Plaintiffs have failed to allege any property interest in that development. *Luedtke v. County of Milwaukee*, 521 F.2d 387, 470-71 (7th Cir. 1975)(holding that plaintiffs must look to the owner and operator of airport, not the airlines, for compensation from takings). And, as Plaintiffs admit that they sold their ownership interest in Doubletree Estate, it is implausible that they were denied "all economically beneficial" use of the land. *Lucas*, 505 U.S. at 1015.

Even if Plaintiffs' allegations in the amended complaint could establish a Takings Clause violation, this claim would not be ripe for consideration because have they failed to allege in their amended complaint either that a final decision by the government

entity responsible for the taking has been made or state procedures have been exhausted. *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson*, 473 U.S. 172, 194-95 (1985)(noting that a plaintiff must seek compensation through procedures state has provided for doing so to ripen takings claim); see also *Peters v. Village of Clifton*, 498 F.3d 727, 732 (2007)(noting that a plaintiff property owner cannot claim a violation until he has received a final decision by the entity responsible for the taking and also sought and been denied compensation under the available state court procedures); See also *Behavioral Institute of Indiana, LLC v. Hobart City of Common Council*, 406 F.3d 926, 931 fn 2. (7th Cir. 2005)(noting that a failed state court takings proceeding is a component of the federal constitutional claim). Therefore, this claim must be dismissed without prejudice. *Id.*

> Whether Plaintiffs provided Indiana Tort Claims
> <u>Notice to Defendants is to be determined at a later date.</u>

Defendants argue that Plaintiffs' supplemental state law claims of defamation, tortious interference with business relations, and conspiracy must be dismissed because Plaintiffs have failed to provide Defendants with the required statutory tort claims notice. In response, Defendants do not admit or deny whether they complied with the notice provisions of the Indiana Tort Claims Act. While this issue – whether plaintiffs gave the required notice – can be decided before trial, *Indiana Dep't of Highways v. Hughes*, 575

N.E.2d 676, 678 (Ind. Ct. App. 1991), it will not be decided in the current context of a motion to dismiss.

Rather, once Defendants raise this affirmative defense in their responsive pleading, this issue can be addressed in a motion pursuant to either a Rule 12© or Rule 56. *Thompson v. City of Aurora*, 325 N.E.2d 839, 843 (1975).


## DLZ Indiana and Anthony Kenning's Motion to Dismiss

DLZ Indiana and Anthony Kenning have filed their own motion to dismiss Plaintiffs' amended complaint.  Many of their arguments mirror those made in the Town of Winfield motion to dismiss.  For example, these Defendants argue: (1) the Count 1 RICO claim should be dismissed because Plaintiffs failed to adequately plead a "pattern of racketeering activity"; (2) the Count 3 procedural due process claim should be dismissed because Plaintiffs fail to plead that state law remedies are inadequate; (3) the Count 4 takings claim should be dismissed because Plaintiffs failed to allege they suffered a physical property invasion or were denied all economic and beneficial use of their land; and (4) the two-year limitations period bars or limits Plaintiffs' claims.  This Court's rulings on these issues regarding the Town of Winfield's motion to dismiss apply with equal force to DLZ Indiana's motion to dismiss and are incorporated herein.

DLZ Indiana and Kenning do, however, raise two issues not

raised by the Town of Winfield's Motion to Dismiss.  First, the DLZ Defendants argue that Plaintiffs' alleged section 1983 claims and constitutional claims only implicate conduct undertaken by DLZ Defendants in their official capacity, not in their personal capacities.  Second, DLZ Indiana Defendants argue that Count 6 must be dismissed because Plaintiffs insufficiently pled defamation per se and per quod.

> Plaintiffs' amended complaint
> <u>states an individual capacity claim</u>

Defendants admit that Plaintiffs allege facts supporting section 1983 claims and constitutional claims involving the DLZ Defendants' actions as official Town engineer.  (DE# 67, p. 6). However, DLZ Defendants argue that any claim against them for actions taken as Town Engineer can only support an official capacity claim.  Based on that belief, DLZ Defendants seek dismissal of any claim against them in their individual capacity.

DLZ Defendants are mistaken about the scope of individual capacity section 1983 claims.  An individual capacity claim can be maintained against government agents and employees.  To state a section 1983 claim against a defendant in his personal capacity, Plaintiffs must allege that the defendant caused or personally participated in a statutory or constitutional violation, and did so under color of law.  *Kramer v. Village of N. Fond du Lac*, 384 F.3d 856, 866 (7th Cir. 2004).  Indeed, if "the theory is that the

defendant did something that is tortious independent of the office the defendant holds," an individual capacity suit can be maintained. Walker v. Rowe, 791 F.2d 507, 508 (7th Cir. 1986). Thus, contrary to DLZ Defendants' position, an individual capacity suit has been alleged against them.

### Plaintiffs' defamation claim is adequately pled

In Count 6 of the amended complaint, Plaintiffs allege Defendant Kenning, on behalf of DLZ and as town engineer, made defamatory remarks to several people throughout the community about Plaintiffs, implying that Plaintiffs were submitting substandard engineering plans. These comments allegedly relate to Plaintiffs' misconduct in their trade and profession. (Am. Cmplt ¶ 114). These remarks caused both money damages as well as damage to Plaintiffs reputation and emotional embarrassment. Plaintiffs allege these remarks are defamatory per se and defamatory per quod.

"A communication is defamatory per se if it imputes: (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct." *Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007). Of consequence is whether the amended complaint alleges misconduct in Plaintiffs' trade. Defendants argue that Plaintiffs' amended complaint fails to state a claim because it merely alleges that Kenning implied Plaintiffs submitted substandard engineering plans,

which does not suggest any misconduct by Plaintiffs. However, Defendants read Plaintiffs' allegations too narrowly. Plaintiffs do not allege that the defamatory remarks are that Plaintiffs were submitting substandard engineering plans. Instead, Plaintiffs allege that as a result of the defamatory remarks, it could be implied that Plaintiffs were submitting substandard plans. This is a difference with distinction.

The amended complaint does not describe specifically what defamatory remarks Kenning made. It only sets forth that those remarks implied that Plaintiffs were submitting substandard plans. Surely, the alleged defamatory remarks, which caused such an implication, could have suggested misconduct by Plaintiffs in their trade in profession. This is exactly what Plaintiffs allege. (Am. Cmplt ¶ 114).

Plaintiffs also allege Kenning's remarks constitute defamation per quod. To maintain this action, Plaintiff must show Kenning acted with malice and that Plaintiffs suffered special damages as a result of the defamation. *Moore v. University of Notre Dame*, 968 F.Supp. 1330, 1335 (N.D. Ind. 1997). "Special damages are damages that are pecuniary in nature and have been actually incurred as a natural and proximate cause of the wrongful act." *Id.* (citation omitted).

Defendants argue the defamation per quod claim should be dismissed due to Plaintiffs' failing to adequately allege malice and

failing to itemize special damages. This Court notes that Plaintiffs do allege Kenning made his defamatory remarks out of malice. (Am. Cmplt ¶ 116). That is sufficient at this point. Moreover, Plaintiffs claim they have suffered "loss of business opportunities with new developers, loss of business profits from the Doubletree development, and delay in the payment of existing accounts." (Am. Cmplt ¶ 115). These allegations satisfy pleading special damages as they allege a definite pecuniary loss.

CONCLUSION

For the reasons set forth above, Defendants' motions are **GRANTED IN PART and DENIED IN PART**. Accordingly, Counts 1, 3 and 4 of the Amended Complaint are **DISMISSED**.

DATED: October 29, 2008      /s/**RUDY LOZANO, Judge**
                                    **United States District Court**