# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

SUHEIL NAMMARI, *et al,*      )
                             )
Plaintiffs,                  )
                             )
v.                           )      NO. 2:07-CV-306
                             )
TOWN OF WINFIELD, *et al,*    )
                             )
Defendants.                  )

## OPINION AND ORDER

This matter is before the Court on: (1) Defendants DLZ Indiana, LLC and Anthony Kenning's Supplemental Motion for Dismissal of Plaintiffs' Title 42 U.S.C. Section 1983 Claims Arising Before September 7, 2005, For Failure to State a Claim (DE# 79), filed on December 22, 2008; (2) Defendants' Motion for Judgment on the Pleadings (DE# 84), filed by Town of Winfield, the Town Council of the City of Winfield, the Town of Winfield Building Commissioner, the Town of Winfield Building Inspector, William Teach and Thomas Richardson, on January 26, 2009; (3) Defendant Marvin Pinkowski's Motion to Join in Defendant Town of Winfield, et al.'s Motion for Judgment on the Pleadings (DE# 86), filed on February 2, 2009; and (4) Request to Strike and Withdraw Plaintiffs' Fourth Argument of Their Response to Defendant DLZ's

Supplemental Motion to Dismiss (DE# 90), filed by Plaintiffs on February 17, 2009.

For the reasons set forth below:

(1)  DLZ's motion to dismiss is **GRANTED**;

(2)  The Town of Winfield's Motion for Judgment on the Pleadings is **GRANTED in part and DENIED in part**.  To the extent the motion seeks judgment on the pleadings with regard to Plaintiffs' state law claims against William Teach, in his individual capacity, the motion is **DENIED**.  In all other respects, however, the motion is **GRANTED**;

(3)  Marvin Pinkowski's motion to join is **GRANTED**; and

(4)  Plaintiffs' motion to strike and withdraw is **GRANTED**.

<u>BACKGROUND</u>

On September 7, 2007, Plaintiffs, Suheil Nammari and Intercon Engineering Corp., filed a six-count complaint against Defendants. In response, Defendants filed motions to dismiss, which were granted in part and denied in part.  In April of this year Plaintiffs filed an amended complaint, re-alleging their original claims, adding additional claims and adding Thomas Richardson as a Defendant.  Defendants filed motions to dismiss the amended complaint, which were also granted in part and denied in part.  As a result, Counts 1, 3 and 4 of the amended complaint were dismissed.  Count 2 (Plaintiffs' section 1983 Equal Protection claim), Count 5 (Plaintiffs' First and Fourteenth Amendment claim), Count 6 (Plaintiffs' Defamation claim), Count 7 (Plaintiffs' tortious interference with business relations claim), and Count 8

(Plaintiffs' Indiana conspiracy law claim) remain pending.

Defendants DLZ Indiana and Anthony Kenning have filed their motion to dismiss arguing that Plaintiffs' section 1983 claims based on pre-September 7, 2005, allegations are statutorily barred even when given the benefit of equitable tolling.

The Town of Winfield Defendants have filed their motion for judgment on the pleadings reiterating DLZ Indiana's arguments regarding Plaintiffs' section 1983 claims and also claiming that Plaintiffs' state law claims are barred due to Plaintiffs' failure to comply with the Indiana Tort Claims Act's notice provision. Each of these motions will be addressed in turn.

DISCUSSION

Allegations in Plaintiffs' Amended Complaint

Plaintiff, Suheil Nammari ("Nammari"), is a Lake County, Indiana, resident and the President of Intercon Engineering. (Am. Cmplt. ¶¶ 8 & 9). Defendant Town of Winfield is a municipal corporation and Defendants William Teach and Marvin Pinkowski are members of the Winfield Town Council. (Am. Cmplt. ¶¶ 10, 13-16). Defendants, the Town of Winfield Building Commissioner, the Town of Winfield Building Inspector, and Thomas Richardson were appointed to act on behalf of the Town of Winfield. (Am. Cmplt. ¶ 17). Defendant DLZ Indiana, LLC serves as the Town of Winfield's Engineer and Defendant, Anthony J. Kenning, was the project manager

for DLZ Indiana, LLC. (Am. Cmplt. ¶¶ 18, 19).

Plaintiffs are engineers and property owners who are in the business of developing property and assisting other developers develop residential subdivisions. (Am. Cmplt. ¶ 21). Nammari was a part owner of the Doubletree Estates Development and owns a piece of residential property located in the Town of Winfield, on which he has built his own residence. (Am. Cmplt. ¶ 22). Nammari was born in Jerusalem and is a non-practicing Muslim of Palestinian decent. (Am. Cmplt. ¶ 23).

David Lasco ("Lasco") is a long-time client and business associate of Plaintiffs. (Am. Cmplt. ¶ 24). Plaintiffs are known in Winfield as David Lasco's engineers. (Am. Cmplt. ¶ 25). During the November 2003 election for council members in Winfield, Nammari and Lasco supported candidates who ran against Defendants Teach and Pinkowski. (Am. Cmplt. ¶ 27). During the election, Teach informed voters that if he were elected, he intended to block all of Lasco's developments. (Am. Cmplt. ¶ 28).

Hidden Creek II is a subdivision that was designed and proposed by Lasco, which was to be located in the Town of Winfield. (Am. Cmplt. ¶¶ 29, 30). This subdivision received preliminary plat approval from the Winfield Plan Commission on July 19, 2002. (Am. Cmplt. ¶ 31). Secondary or Final Plat Approval was granted by the Town of Winfield on December 10, 2003. (Am. Cmplt. ¶ 32). The Final Plat Approval was subject only to the posting of a bond.

(Am. Cmplt. ¶ 33). The amount of the bond was to be determined by the town engineer based on the anticipated construction costs of the development, plus an additional 10 percent adjusted for inflation. (Am. Cmplt. ¶ 34). After Hidden Creek II was given secondary approval in December 2003, the Town of Winfield made efforts to change the final plat. (Am. Cmplt. ¶ 35).

In early 2004 Plaintiff began construction on Hidden Creek II in conformity with the final plat approval. (Am. Cmplt. ¶ 36). By letter dated February 12, 2004, Defendant DLZ Indiana LLC, serving as Winfield's Town Engineer, notified the Town of Winfield Planner that the recommended performance bond amount for Hidden Creek II should be $1,210,000. (Am. Cmplt. ¶ 37). Copies of this letter were sent to William Teach, the Town of Winfield, Suheil Nammari, Intercon Engineering Corp. and DLZ Indiana. (Am. Cmplt. ¶ 37).

On October 6, 2003, Defendant DLZ Indiana LLC recommended a performance bond in the amount of $649,000 for the Prairie Crossing Development, which is similarly situated to the Hidden Creek II Development. (Am. Cmplt. ¶ 38; Ex. B). Defendant DLZ required Prairie Crossing to comply only with the Rational Method for Storm Drainage Requirements, while Hidden Creek II was held to the higher more expensive TR 55 Storm Drainage Requirements. (Am. Cmplt. ¶ 39).

On February 25, 2004, Town of Winfield Attorney Lambka sent David Lasco of Lasco Development a letter to cease and desist

construction on Hidden Creek II. (Am. Cmplt. ¶ 40; Ex. C). On March 1, 2004, David Lasco obtained the $1.2 million dollar performance bond. (Am. Cmplt. ¶ 41). On March 2, 2004, Mr. Lambka wrote a letter to Lasco stating that he had received the Agreement for Easement and the Letter of Credit. (Am. Cmplt. ¶ 42). Mr. Lambka stated that the Agreement for Easement was not sufficient and that the Town would not accept the Letter of Credit. (Am. Cmplt. ¶ 42).

At the Town of Winfield's monthly meeting in March of 2004, Attorney Ted Fitzgerald appeared on behalf of David Lasco for the purpose of obtaining approval of the $1.2 million dollar bond for the Hidden Creek II subdivision. (Am. Cmplt. ¶ 44). Before Attorney Fitzgerald had an opportunity to speak and before there was any discussion at the meeting regarding Hidden Creek II, Attorney Fitzgerald was informed by the Town Council President, Mr. Teach, that the Town would not approve the bond. (Am. Cmplt. ¶ 45). At this March 2004 meeting, the Council rescinded the amount of the Hidden Creek II performance bond and failed or refused to reset the amount. (Am. Cmplt. ¶ 47). Attorney Fitzgerald believed that the Town Council had violated the "Sunshine laws" and the "open door laws" regarding the meeting and the Hidden Creek II subdivision. (Am. Cmplt. ¶ 46).

On November 12, 2004, Lasco initiated a lawsuit in federal court against the Town of Winfield, alleging that the Town had

violated his constitutional rights by attempting to delay and prevent him from completing the Hidden Creek II Development. (Am. Cmplt. ¶ 48). Plaintiffs were not parties to Lasco's federal lawsuit, because it was believed that the Town of Winfield's discrimination was aimed at Lasco personally; the only information Plaintiffs had regarding the motivations for the Town's actions were the statements by William Teach that it was his intention to block Lasco's projects. (Am. Cmplt. ¶ 49).

Nevertheless, Nammari was actively involved in the preparation and investigation of the Town's discriminatory actions towards Lasco. (Am. Cmplt. ¶ 50). Nammari was in contact with both Lasco's attorneys and the Town of Winfield's attorneys in an effort to resolve the dispute between Lasco and the Town of Winfield. (Am. Cmplt. ¶ 51). Despite Plaintiffs' effort in investigating the Hidden Creek II issues and the Doubletree Estates development with the Town of Winfield, it was not until September 7, 2005, that anyone involved on the plaintiffs' side of the Lasco litigation discovered that the Town had also been discriminating and defaming Nammari and Intercon Engineering. (Am. Cmplt. ¶ 52).

On September 7, 2005, during the deposition of James Brown, Plaintiffs first discovered that William Teach and other agents of the Town of Winfield were discriminating against Nammari and Intercon Engineering, making defamatory statements and attempting to interfere in Plaintiffs' business relationships. (Am. Cmplt. ¶

53).  This memo was not discoverable prior to the deposition of James Brown, as Mr. Brown was the Town of Winfield attorney and the attorney-client privilege would have prevented the production of such discovery.  (Am. Cmplt. ¶ 54).  It was not until that September 7, 2005, deposition that Mr. Brown realized that the attorney client privilege did not apply to the document and the document was released to Lasco's attorneys.  (Am. Cmplt. ¶ 54). Prior to receiving this document, Plaintiffs were unable to discover that they were wrongfully injured and were being targeted for harassment and discrimination.  (Am. Cmplt. ¶ 55).

William Teach has made numerous anti-Arab, ant-Muslim and other discriminating remarks about Nammari, including calling him a "camel jockey."  (Am. Cmplt. ¶ 56).  Teach has made these comments to members of the Town Council as well as to members in the business community. (Am. Cmplt. ¶ 57).  William Teach has made these comments before and after September 5, 2005 and continues to do so to date.  (Am. Cmplt. ¶ 57).  Other Defendants have also made defamatory remarks about Plaintiffs.  (Am. Cmplt. ¶ 58).

Nammari was the engineer for the Doubletree Estates development and also had an ownership interest in the development, along with Lasco.  (Am. Cmplt. ¶¶ 59, 60).  Marvin Pinkowski, a Town of Winfield council member, stated that he intended to block one of Plaintiffs' development projects - Doubletree Estates - because it allowed for low-rent housing that would attract

"niggers." (Am. Cmplt. ¶ 61). Defendants have intentionally delayed the Doubletree Estates development. (Am. Cmplt. ¶¶ 62 & 63).

On October 25, 2005, Defendants Anthony Kenning and DLZ, on behalf of the Town of Winfield, sent an e-mail to Tony Meyer and Kenneth Matney, fraudulently stating that the storm water easements for the development were of unacceptable width. (Am. Cmplt. ¶ 64). This letter was allegedly sent to discriminate against Plaintiffs and delay or prevent Plaintiffs' developments from being completed. (Am. Cmplt. ¶ 64).

On November 14, 2005, in a further attempt to hurt Plaintiffs and Plaintiffs' projects, Anthony Kenning allegedly sent a Review Memorandum via fax to the Town of Winfield, Tom Richardson, Kenneth Matney, Tony Meyer and Todd Etzler, which fraudulently required excess additions and corrections to phase 2 of the Doubletree Estates development. (Am. Cmplt. ¶ 65).

Since Defendants Teach and Pinkowski have been serving on the Town Council, the Town has engaged in a pattern of harassment and discrimination against Plaintiffs and Plaintiffs' clients and developments. (Am. Cmplt. ¶ 66). However, this pattern was not discoverable despite Plaintiffs' diligent investigation of the issues until September of 2005 as the harassment appeared to be directed only at Lasco until Jim Brown's deposition. (Am. Cmplt. ¶ 66).

Due to Defendants delaying the Hidden Creek II project, Plaintiffs had to re-file their sketch plans and preliminary plat approval. (Am. Cmplt. ¶ 67). Each refiling required Plaintiffs and their clients to pay fees to the Town of Winfield. (Am. Cmplt. ¶ 67). In addition, Anthony Kenning and DLZ Indiana received a monetary gain by requiring Plaintiffs to resubmit calculations and designs, as they were able to bill the Town of Winfield by the hour for the extra time spent reviewing resubmitted material and attending special meetings. (Am. Cmplt. ¶ 68).

Plaintiffs had a personal interest in the completion of the Hidden Creek II development, because the contract stated that they would be paid for their engineering services only after the project was completed. (Am. Cmplt. ¶ 69). Because the Town wrongfully delayed the Hidden Creek II project, Plaintiffs were never paid for their engineering work on Hidden Creek II. (Am. Cmplt. ¶ 70). Because of the Town of Winfield's harassment and delay of Plaintiffs' development projects, Plaintiffs and Lasco had to sell their interest in Doubletree Estate development; Plaintiffs took a financial loss on the sale. (Am. Cmplt. ¶ 71). Before granting final plat approval to the Doubletree Estate development, William Teach insisted that the new owners present proof that Lasco was no longer a participant in that subdivision. (Am. Cmplt. ¶ 72).

In March 2007, Plaintiff Nammari was building his personal residence in the Town of Winfield. (Am. Cmplt. ¶ 73). Nammari

attempted to get Winfield's building inspector to inspect and approve the construction, but the inspector told Nammari that his home was in violation of the height ordinance and would have to apply to the Council for a variance. (Am. Cmplt. ¶ 73). At least 5 other homes in the same subdivision have violated the same height ordinance and were never required by the building inspector to request a variance from the Town Council. (Am. Cmplt. ¶ 73).

In August 2007, Council Member Teach opposed Plaintiff Nammari's request for a variance of his personal residence. (Am. Cmplt. ¶ 74). After the filing of Plaintiffs' original complaint, Defendants admitted that Plaintiff did not need a variance and granted Plaintiff the green tags to proceed with building his home. (Am. Cmplt. ¶ 75). The delay in the construction of Nammari's home cost Plaintiff additional expense, including obtaining extensions on building permits and paying filing and publication fees. (Am. Cmplt. ¶ 76).


DLZ's Motion to Dismiss

In the instant motion, DLZ Defendants request this Court dismiss Plaintiffs' section 1983 claims based on pre-September 7, 2005, allegations. The amended complaint alleges four pre-September 7, 2005, actions that DLZ seeks dismissal of:

> (1) a February 12, 2004, letter from DLZ to the Town recommending that a $1,210,000 performance bond be required for the Hidden Creek II subdivision. (Am. Cmplt ¶ 37).

(2)     a February 25, 2004, letter from Town attorney
        Bruce Lambka to developer David Lasco ordering him
        to cease and desist construction on Hidden Creek
        II.  (Am. Cmplt ¶ 40).

(3)     a March 2, 2004, letter from Lambka to Lasco
        stating that an Agreement for Easement that Lasco
        had submitted to the Town was insufficient.  (Am.
        Cmplt ¶ 42).

(4)     the Town Council's failure to approve a performance
        bond amount for Hidden Creek II at its March 2004
        meeting.  (Am. Cmplt ¶¶ 44-47).

This is not the first time this Court has reviewed these
allegations.  In the prior round of motions to dismiss, whether
Plaintiffs' adequately alleged "due diligence" in order to invoke
equitable tolling regarding these claims was at issue.  In this
Court's October 29, 2008, opinion and order, the Court found that
Plaintiffs had alleged that they exercised due diligence but
nevertheless could not obtain the necessary information until
September 7, 2005.  Therefore, this Court found that equitable
tolling could be invoked regarding Plaintiffs' pre-September 7,
2005, claims.

In the instant motion, Defendants argue that the length of the
tolling period - an issue which has not yet been addressed - needs
to be examined to determine whether Plaintiffs' pre-September 7,
2005, claims are timely.  Thus, the question currently before the
Court is whether the allegations that were equitably tolled until
September 7, 2005, were timely filed on September 7, 2007.  Not
only do Plaintiffs argue that their pre-September 7, 2005,

allegations are timely because of equitable tolling, but they also assert the allegations are timely based on the continuing violation doctrine and the discovery rule.  Each of these arguments will be addressed in turn.


Rule 12(b)(6) Legal Standard

In determining the propriety of dismissal under Federal Rule of Civil Procedure 12(b)(6), the court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff.  *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001).  A complaint is not required to contain detailed factual allegations, but it is not enough merely that there might be some conceivable set of facts that entitles the plaintiff to relief.  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007), abrogating in part *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  A plaintiff has an obligation under Rule 8(a)(2) to provide grounds of his entitlement to relief, which requires more than labels and conclusions.  *Id.* at 1965.  Factual allegations, taken as true, must be enough to raise a right to relief above the speculative level.  *Id.*  Moreover, a plaintiff may plead himself out of court if the complaint includes allegations that show he cannot possibly be entitled to the relief sought.  Jefferson v. Ambroz, 90 F.3d 1291, 1296-97 (7th Cir. 1996).

Equitable Tolling

Equitable tolling does not automatically afford litigants an entirely new, two-year period to file suit beginning from the date on which they obtain the information necessary to their claims. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452 (7th Cir. 1991). Instead, equitable tolling only suspends the statute of limitations for a "reasonable time after [the litigant] has obtained, or by due diligence could have obtained, the necessary information. *Id.* at 453. In cases where "the necessary information is gathered after the claim arose but before the statute of limitations has run, the presumption should be that the plaintiff could bring suit within the statutory period . . .." *Id.*

By their own admission, Plaintiffs discovered facts necessary to lead them to suspect wrongdoing in September 2005. At that time, there were still five months left within the statutory filing period. Plaintiffs argue that "[c]onsidering the complicated claims surrounding RICO, § 1983, Due Process and the Takings Clause that were required to be filed in this matter it is not unreasonable, and it is equitable, to allow Plaintiffs the benefit of a new limitations period to investigate and file this claim." (Pls Resp. p. 4). This argument, though, does not rebut the presumption that Plaintiffs could have brought suit within the statutory period. Nor does it explain why Plaintiffs would wait until September 7, 2007, in which to file their complaint. Not

surprisingly, then, Plaintiffs fail to cite any law that would support their position.

It must be remembered that equitable tolling is an equitable doctrine, which means that it affirds Plaintiffs extra time if they need it. *Cada*, 920 F.2d at 452. "If [plaintiffs don't] need it there is no basis for depriving the defendant[s] of the protection of the statute of limitations." *Id.* Here, even taking the amended complaint in a light most favorable to Plaintiffs, waiting until September 7, 2007, to bring a suit on the pre-September 7, 2005, allegations was unreasonable. There is nothing in the amended complaint that would allow this Court to come to a different conclusion. Therefore, Plaintiffs cannot rely on the doctrine of equitable tolling for a full two-year statute of limitations from the time they discovered facts necessary to lead them to suspect wrongdoing in September 2005.[1]

Plaintiffs also attempt to justify their late filing date by claiming that they believed that the discrimination and harm they suffered "would be addressed and resolved through the Lasco litigation" without filing their own claim. Plaintiffs claim held

---

[1]Plaintiffs, pointing to this Court's October 2008, opinion and order, argue that this Court already determined that this case should be equitably tolled and that two years was a reasonable period of time to allow Plaintiffs to investigate and file their claims. However, the only issue this Court addressed regarding equitable tolling in its October 2008, opinion was the only issue the parties raised: whether Plaintiffs sufficiently pled due diligence.

this belief until August 2007, when they determined they would have to file their own lawsuit. However, Plaintiffs cannot justify a late filing in this case by waiting to see if they could resolve their issues in the Lasco litigation. See e.g. *Hentosh v. Herman M. Finch University of Health Sciences*, 167 F.3d 1170, 1175 (7th Cir. 1999)(finding that plaintiff could not justify late EEOC filing by pointing to her attempts to resolve the issue informally and waiting to file her EEOC charge until the informal efforts proved unsuccessful).

Continuing Violation Doctrine

Plaintiffs argue their pre-September 7, 2005, allegations are timely because of the continuing violation doctrine. Plaintiffs assert that they can rely on this doctrine because they have alleged a pattern of harassment and discrimination that has been ongoing and continuous for more than five years, a pattern that was not discernable until September 7, 2005.

The continuing violation doctrine allows a plaintiff to delay filing suit until a series of acts by a prospective defendant blossoms into a wrongful injury on which a suit can be based. *Limestone Development Corp. v. Village of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008). Typically, this doctrine is used in workplace harassment cases when acts contribute to a hostile work environment; "the first instance of a co-worker's offensive words

-16-

or actions may be too trivial to amount to actionable harassment, but if they continue they may eventually amount to an actionable pattern of harassing behavior. And then the entire series is actionable." *Lewis v. City of Chicago*, 528 F.3d 488, 493 (7th Cir. 2008)(citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 107 (2002)). However, when the acts are each discrete acts of discrimination, the continuing violation doctrine is inapplicable. In this latter scenario, "[d]iscrete discriminatory acts are not actionable if time-barred even if they are related to timely filed charges of later acts." *Tate v. Ancell*, 2009 WL 513751, No. 08-0200-DRH, at *5 (S.D. Ill. March 02, 2009)(citing *Morgan*, 536 U.S. at 113).

Here, each of the complained of pre-September 7, 2005, allegations are discrete acts of alleged discrimination. Even though they are related to post-September 7, 2005, allegations, this is not enough to make them timely. *Id.* Thus, to the extent Plaintiffs base claims on the pre-September 7, 2005, allegations, those claims would be time-barred.

Discovery Rule

In this Court's October 28, 2008, Opinion, it was determined that the discovery rule did not apply. In Plaintiffs response, they reassert that the discovery rule should apply. For the reasons set forth in this Court's October 28, 2008, Opinion, Plaintiff's argument is without merit.

## Winfield's Motion for Judgment on the Pleadings

In the instant motion, the Town of Winfield Defendants argue that Plaintiffs' supplemental state law claims should be dismissed and also that Plaintiffs' claims that accrued prior to September 7, 2005, remain barred under the statute of limitations.

## Rule 12(c) Legal Standard

A party is permitted under Rule 12(c) to move for judgment on the pleadings after the parties have the complaint and the answer. Fed. R. Civ. P. 12(c); *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). A motion for judgment on the pleadings "under Rule 12(c) is reviewed under the same standard as a motion to dismiss under 12(b); the motion is not granted unless it appears beyond doubt that the plaintiff can prove no facts sufficient to support his claim for relief, and the facts in the complaint are viewed in the light most favorable to the non-moving party." *Flenner v. Sheahan*, 107 F.3d 459, 461 (7th Cir. 1997). The court, in ruling on a motion for judgment on the pleadings, must "accept as true all well-pleaded allegations." *Forseth v. Village of Sussex*, 199 F.3d 363, 364 (7th Cir. 2000). A court may rule on a judgment on the pleadings under Rule 12(c) based upon a review of the pleadings alone, which include the complaint, the answer, and any written instruments attached as exhibits. *Id*. at 452-453.

<u>Timeliness of Pre-September 7, 2005, Allegations</u>

Like the DLZ Defendants above, the Town of Winfield Defendants argue that Plaintiffs' pre-September 7, 2005, allegations are untimely. For the reasons set forth above, this Court agrees.

<u>Plaintiffs' State Law Claims</u>

In their answer to Plaintiffs' amended complaint, the Town of Winfield Defendants raise the affirmative defense that "Plaintiffs' claim brought under the Indiana common law remain barred by Plaintiffs' failure to provide Defendants with a Notice of Tort Claims." (DE# 72, p. 37).

The Indiana Tort Claims Act ("ITCA") provides that " . . . a claim against a political subdivision is barred unless notice is filed with a governing body of that political subdivision . . . within one hundred eighty (180) days after the loss occurs." Ind. Code § 34-13-3-8(a)(1). A person may not initiate a lawsuit against a governmental entity until the person's claim has been denied. Ind. Code § 34-13-3-13. This notice requirement applies equally to suits against municipal employees. *Leathem v. City of LaPorte*, Case No. 3:07-cv-220, 2008 WL 4224940, *6 (N.D. Ind. Sept. 10, 2008). Once defendants raise a plaintiff's failure to comply with the ITCA's notice requirements, the burden shifts to the plaintiff to prove compliance. *Brown v. Alexander*, 876 N.E.2d 376, 384 (Ind. Ct. App. 2007).

In response, Plaintiffs argue that: (1) their claims are not barred by Indiana Code section 34-13-3-8(b); (2) their claims are exempt from the notice requirements pursuant to Indiana Code section 34-13-3-5; and (3) that, in the alternative, they did file a Notice of Tort Claim with the Town of Winfield on February 12, 2009, which is within 180 days of the alleged injury. Each of these will be addressed in turn.

First, Indiana Code section 34-13-3-8(b) is of no help to Plaintiffs. That section states: "A claim against a political subdivision is not barred for failure to file notice with the Indiana political subdivision risk management commission . . . if the political subdivision was not a member of the political subdivision risk management fund . . . at the time the act or omission took place." Plaintiffs assert that the Town of Winfield is not a member of the Indiana Political Risk Management Commission and, therefore, their claims cannot be barred. However, this section only allows plaintiff to circumvent the need to file notice with the risk management commission in certain situations. Regardless of section 34-13-3-8(b), a plaintiff is still required to provide notice to the governing body of a political subdivision under section 34-13-3-8(a). Without doing so, Plaintiffs' state law tort claims against the Town of Winfield and its employees acting within the scope of their employment would be barred.

Second, Plaintiffs argue that the supplemental state law

claims brought against Defendant Kenning and Teach are exempt from the ITCA notice provisions pursuant to Indiana Code section 34-13-3-5.[2]  It is true that a lawsuit filed against an employee of a governmental agency that alleges the employee caused a loss through actions that are criminal, clearly outside the scope of the employee's employment, malicious, or willful and wanton are exempt from the ITCA notice requirements.  Ind. Code § 34-13-3-5; *Longs v. Lebo*, No. 3:07-CV-83, 20078 WL 4831747, * 6-7 (N.D. Ind. Nov. 4, 2008).

Accepting as true Plaintiffs' version of the facts, Plaintiffs have met their burden of alleging conduct that falls within the exception to the ITCA notice requirement.  While at times the amended complaint alleges Teach was acting within the scope of his employment, it also alleges Teach was acting with malice when he committed state law violations.

Notably, though, this exception to the ITCA only applies to a "lawsuit filed against an employee personally. . .."  Ind. Code § 34-13-3-5(b).  Thus, the exception cannot apply to Plaintiffs' state law claims brought against the Town of Winfield or Defendant Teach in his official capacity.  As a result, only Plaintiffs' state law claims against Defendant Teach in his personal capacity remains.

_____

[2]The motion for judgment on the pleadings was not brought by Defendant Kenning.  Therefore, this Court makes no ruling on the state claims as they pertain to him.

Finally, Plaintiffs argue that they did, indeed, file a notice of tort claim on February 12, 2009. (Pl. Resp. p. 16). A Tort Claims Notice must be filed within one hundred eighty days after the loss occurs. Ind. Code § 34-13-3-8. Thus, to be timely, Plaintiffs' state law claims would have occurred on or around August 16, 2008, which is four months after the amended complaint was filed. Despite this, Plaintiffs argue that such notice is timely because the loss complained of in the complaint "is still occurring." However, according to the ITCA, Plaintiffs' claims accrued when their losses occurred. Ind. Code § 34-13-3-8(a). The losses occurred before August 16, 2008 and, therefore, the February 12, 2009, Tort Claim Notice is untimely.[3]

CONCLUSION

For the reasons set forth above:

(1)  DLZ's motion to dismiss is **GRANTED**;

(2)  The Town of Winfield's Motion for Judgment on the Pleadings is **GRANTED in part and DENIED in part**.  To the extent the motion seeks judgment on the pleadings with regard to Plaintiffs' state law claims against William Teach, in his individual capacity, the motion is **DENIED**. In all other respects, however, the motion is **GRANTED**;

---

[3]In addition, the alleged Notice of Tort Claim, which Plaintiffs have failed to present to the Court, must be denied in whole or in part before Plaintiffs can initiate suit.  Ind. Code § 34-13-3-13.  There is no claim or evidence that the claim was ever denied.

(3)   Marvin Pinkowski's motion to join is **GRANTED**; and

(4)   Plaintiffs' motion to strike and withdraw is **GRANTED**.


**DATED:  May 13, 2009**                    **/s/RUDY LOZANO, Judge**
                                            **United States District Court**